USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___6/25/2025___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LENORE D'ANZIERI,

                              Plaintiff,

              -against-

HARRISON GLOBAL LLC and STEVEN
PITEL,

                              Defendants.

21-CV-8506 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff sued Harrison Global LLC ("Harrison Global" or the "Company"), her former

employer, and Steven Pitel, her former supervisor, for discrimination, failure-to-accommodate,

and retaliation, in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination

in Employment Act of 1967, the Americans with Disabilities Act of 1990, the New York City

Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL").[1]

Defendants moved for summary judgment re-asserting their argument that the Court lacks

personal jurisdiction over Plaintiff's remaining claims and arguing on the merits that no dispute

as to any material facts precludes judgment in their favor. The Court agrees that it lacks personal

jurisdiction over this action.

## BACKGROUND

Plaintiff is a woman over the age of 65. Consolidated 56.1 Statement of Material Facts,

Dkt. 153 ("56.1 St."), ¶ 1. In approximately July 2016, she began working at Harrison Global —

a privately owned chauffeured transportation company — as a Director in its Travel Agencies

---

[1]    The Court previously dismissed Plaintiff's disability discrimination and failure-to-accommodate claims
against the Company and dismissed all but her sex discrimination claims against Pitel for a lack of personal
jurisdiction.

and Travel Management Companies vertical, which included leisure and corporate travel services. *Id.* ¶¶ 2, 4, 20, 122–23. Although Defendants dispute some details, all agree that Plaintiff's job responsibilities included generating sales by negotiating contracts with leisure and corporate travel agencies. *Id.* ¶¶ 123–25. Plaintiff's compensation package included a base salary and commissions based on revenue earned from her accounts. *Id.* ¶¶ 129–30. Plaintiff reported to Pitel, Harrison Global's Chief Sales Officer, during her time at the Company. *Id.* ¶¶ 3, 9. On or about March 20, 2020, her employment was terminated. *Id.* ¶ 230.

## I. Plaintiff's Discrimination & Retaliation Allegations

Plaintiff asserts that she was discriminated against, harassed, and retaliated against. Because this case is being resolved on jurisdictional grounds, the Court will provide only a brief summary of her claims. For the most part, Defendants deny all of the factual underpinnings of Plaintiff's claims.

The act of harassment about which Plaintiff complains is associated with ground transportation services the Company provided for models working for Victoria's Secret at a fashion show in New York. *Id.* ¶ 152. During a conference call that Plaintiff attended remotely from New York, [2] CEO Scott Solombrino praised the travel services the Company had provided for that event and told staff to convey his praise to the drivers. *Id.* ¶¶ 153–54. Pitel allegedly responded, "I am sure what would have made [the drivers] happy was to go into the bathroom with the models." *Id.* ¶ 155. Solombrino allegedly said, "Thank God HR isn't on the phone because he'd go into HR jail." *Id.* ¶ 158.

---

[2]    In her deposition, Plaintiff testified that she was in New York for personal reasons; Defendants note that she was not assigned to do work for Defendants at the Victoria's Secret Fashion Show or required by Defendants to be in New York during Fashion Week. *See* 56.1 St. ¶ 153.

The first complained of act of discrimination directed towards Plaintiff[3] occurred during a January 2019 staff meeting when Pitel allegedly flashed his middle finger at Plaintiff. *Id.* ¶ 159. Plaintiff also asserts that Pitel told her on multiple occasions that the only reason she had a job was because he liked her. *Id.* ¶ 161. Plaintiff alleges that the Company also discriminated against her in September 2019 when it transferred AmexGBT, her largest account, to David Ng, a younger, male employee. *Id.* ¶¶ 213–23.[4]

In terms of age discrimination, Pitel directed younger members of the sales team to attend certain events rather than sending Plaintiff to those events and issued age guidelines that permitted sales team members over the age of 50 to leave client events early. *Id.* ¶¶ 173–83; 226–27. Of note, Pitel allegedly did not permit Plaintiff to attend an AmexGBT event in 2019 and said he wanted to send "young'uns" instead. *Id.* ¶¶ 58, 174. Plaintiff claims that her compensation, but not the compensation of younger, male employees on the sales team, was reduced in 2019. *Id.* ¶ 184–94.[5]

On or about May 29, 2019, and June 3, 2019, Plaintiff spoke with Carrie Mongiori, the Company's Human Resources Director, allegedly concerning the discrimination about which she is now complaining. *Id.* ¶¶ 195–208. In July 2019, Plaintiff filed an EEOC charge in New York. *Id.* ¶ 209. Plaintiff asserts that Defendants retaliated against her by terminating her employment

---

[3]    Plaintiff also accuses Pitel of discriminating against and harassing other female employees on the sales team; Defendants deny doing so. 56.1 St. ¶¶ 163–71.

[4]    Defendants deny that the AmexGBT account was assigned to Ng. 56.1 St. ¶ 223. Defendants claim that Ng was tapped to explore a business opportunity with AmexGBT outside of Plaintiff's vertical and that the relevant AmexGBT accounts remained assigned to Plaintiff throughout her tenure at the Company. *Id.* ¶¶ 221–25.

[5]    Defendants deny that commission rates for younger, male employees were not also reduced. *See* 56.1 St. ¶ 193.

in March 2020 while retaining less qualified, younger male employees.  *Id.* ¶¶ 230–48; *see also id.* ¶ 108.

## II. Relevant Jurisdictional Facts

Harrison Global is a Massachusetts corporation with its headquarters and principal place of business located there.  *Id.* ¶ 6.[6]  The Company also maintains a location in Astoria, New York.  *Id.* ¶¶ 7–8.[7]  Pitel resided in Pennsylvania and regularly participated in video conference meetings from Pennsylvania.  *Id.* ¶¶ 12–13.

The parties dispute the circumstances surrounding Plaintiff's onboarding at the Company and the extent of Defendants' knowledge of her remote work locations.  Defendants state that Harrison Global hired Plaintiff from its New Jersey office.  *Id.* ¶ 27.  They further assert that Plaintiff reported Florida and Georgia addresses as her residences and reported a New York location as a previous address.  *Id.* ¶¶ 28–29.  In support of their assertions, Defendants rely on: the offer letter the Company sent to Plaintiff, addressed to a Florida location; Plaintiff's July 2016 employment application, which listed a Florida location as her current address and a New York location as her previous address; a background search report dated July 14, 2016, indicating that a New York address for Plaintiff was current through January 2016; a September 23, 2019 email sent by Plaintiff stating that the Florida address the Company had on file was correct and offering to provide the address for a home she bought in Georgia that year; and Plaintiff's W-2 forms for 2016 through 2020 reflecting a New Jersey address for 2016 and a Florida address for the remaining years.  *Id.* ¶ 30; Mongiori Decl., Dkt. 95, ¶¶ 4–11 and Exs. A,

---

[6]    Plaintiff disputes Defendants' assertion that the Company's principal place of business is in Massachusetts but offers no support for her denial.  *See* 56.1 St. ¶ 6.

[7]    Plaintiff disputes the Company's assertion that it did not have any locations in New York other than the Astoria office, but she offers no evidentiary support for her denial.  *See* 56.1 St. ¶¶ 7–8.

B, D, E, and F thereto. Defendants submitted sworn declarations from Pitel, Mongiori, and Jan Lofgren (a consultant that served as Vice President of Sales) all averring that they understood Plaintiff to reside in Florida and Georgia. 56.1 St. ¶ 31; Pitel Decl., Dkt. 94, ¶ 11; Mongiori Decl. ¶ 4; Lofgren Decl., Dkt. 107, ¶¶ 1–3, 34.

Plaintiff generally denies Defendants' assertions, although her denials are frequently not responsive to Defendants' statements. Plaintiff relies on the following facts to prove that Defendants knew she worked from New York: as of approximately May 2016, while the Company was recruiting Plaintiff, she resided in New York, and CEO Scott Solombrino knew she was a long-time New Yorker, see 56.1 St. ¶¶ 28–30, 35–36, 120; Goldberg Decl., Dkt. 117, Ex. 3, Dkt. 117-3 ("Pl. Decl."), ¶¶ 14–15;[8] in approximately May or June 2016, Plaintiff told Pitel she had an apartment in New York, see 56.1 St. ¶¶ 27–30, 35–36, 120, 128; Pl. Decl. ¶¶ 19, 29; and Plaintiff's onboarding application provided: a New York driver's license, a current Florida address, and a prior New York address, see 56.1 St. ¶¶ 27–30, 35–36, 120; Mongiori Decl., Exs. A, B, and C; Goldberg Decl., Ex. 12, Dkt. 118-2.

During the period that the Company employed Plaintiff, she never worked at the Astoria location, and the only meetings she physically attended were in Boston, Massachusetts, or New Jersey. 56.1 St. ¶¶ 32–33. Communications sent to Plaintiff originated principally from Mongiori in New Jersey, headquarters in Massachusetts, Pitel in Pennsylvania, and Lofgren in

---

[8]    Specifically, Plaintiff avers in her Declaration that, at the time she was being recruited, Solombrino "knew [she] was a long-time New Yorker and had been living in New York for many years." Pl. Decl. ¶ 15. She does not, however, articulate the basis for her assertion regarding Solombrino's knowledge. She also asserts that, while Solombrino and the Company were recruiting her, "it was understood by [her] and the Company that certain factors were relevant to the terms, conditions, and extent of the employment," including, "based on facts known to the Company," her work experience and contacts in New York, her "continuing physical presence in New York," meeting with New York-based clients in New York, and her New York driver's license. Id. ¶¶ 16–17. She again provides no factual basis for her assertions regarding what the Company knew and what was relevant to the Company.

Ilinois; Plaintiff regularly attended meetings and conventions outside of New York. *Id.* ¶ 34.[9]
Defendants deny that Plaintiff ever advised Pitel that she worked remotely from a home office in
New York City; Plaintiff counters that she told Pitel about her apartment in New York while she
was being recruited. *Id.* ¶ 35. Plaintiff acknowledges that she did not report her location when
participating in calls from New York. *Id.* ¶ 36; Goldberg Decl., Ex. 4, Dkt. 117-4 ("Pl. Tr."),
149:19–21, 150:15–151:19.

The parties dispute the extent of Plaintiff's workload that pertained to New York-based
clients or business opportunities. Defendants state that most of Plaintiff's accounts were located
outside of New York, that she interfaced with her AmexGBT contacts at events outside New
York, and that she was not assigned to any specific geographic location. 56.1 St. ¶¶ 38–40.
Plaintiff denies Defendants' assertions, pointing out that her commissions and bonuses were
based on the revenue from her accounts, the largest of which were her New York clients, that she
regularly communicated with her client contact at AmexGBT, Patricia Bawar, in New York, and
that AmexGBT was based in New York. *Id.* Defendants dispute that AmexGBT was based in
New York, stating that the company is headquartered in the United Kingdom. *Id.* ¶ 127. In
terms of physically visiting the client, according to Defendants, AmexGBT maintained virtual
call centers such that there were no physical locations in New York to visit, and Defendants note
that Bawar used a non-New York phone number. *Id.* ¶¶ 213–16.

Regarding the allegations underlying certain of Plaintiff's sex discrimination claims: the
alleged middle finger incident took place in Pennsylvania, and Plaintiff was in California when

---

[9]    Plaintiff denies Defendants' assertion regarding the extra-New York nature of the communications, but the
substance of her denial — that she received the communications in New York — is irrelevant to whether the other
parties to the communication were outside of New York. 56.1 St. ¶ 34. Because she did not controvert the
substance of Defendants' statement of undisputed fact, it is accepted as "uncontested and admissible." *T.Y. v. New
York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).

the purported comments regarding sending "young'uns" to an event were made. *Id.* ¶¶ 41–42. Pitel did not know Plaintiff was in New York when he allegedly made the comment about the drivers who transported the Victoria's Secret models. *Id.* ¶ 43.[10]  When the comment allegedly was made, Plaintiff was in New York at the invitation of a friend who was a model for Victoria's Secret. *Id.* ¶ 44.[11]  Pitel also did not know that Plaintiff was in New York when he allegedly told her, over the phone, that she only had a job because he liked her. *Id.* ¶ 46.[12]

## DISCUSSION

### I.    Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  While Plaintiff need make only a *prima facie* showing of jurisdiction to survive a motion to dismiss for lack of personal jurisdiction, *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), after discovery, that *prima facie* showing must be supported by "an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant," *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (citation omitted).  In assessing a summary judgment motion challenging personal jurisdiction, a court must decide whether the "undisputed facts show the absence of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).  Plaintiff's averments must therefore "be supported by 'admissible evidence.'" *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-CV-06978, 2023 WL 2430381, at *6 (S.D.N.Y. Mar.

---

[10]    Plaintiff's denial of this fact consists only of a legal conclusion. 56.1 St. ¶ 43.

[11]    Plaintiff denied this fact, but in her deposition testimony, she admitted she was in New York for Fashion Week at the invitation of a friend. *See* Pl. Tr. 145:3–7.  That Plaintiff was working remotely while in New York does not contradict Defendants' assertion that she was in New York for personal reasons in the first instance. 56.1 St. ¶ 44.

[12]    Plaintiff's denial of this fact consists only of a legal conclusion. 56.1 St. ¶ 46.

9, 2023) (quoting *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001)).

Personal jurisdiction over a nonresident defendant is governed by the law of the state in which the court sits and by the limits of due process. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010). Accordingly, the Court must engage in a "two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). First, the Court looks to the relevant long-arm statute of the forum state. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). If the exercise of jurisdiction is not statutorily authorized, the analysis ends there. *Cf. Chloé*, 616 F.3d at 164 ("If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with" due process). On the other hand, if the exercise of jurisdiction is statutorily appropriate, the Court must then decide whether such exercise comports with due process; a state may authorize personal jurisdiction over an out-of-state defendant only if "the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)).[13]

Personal jurisdiction can be either general or specific. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). General jurisdiction allows a court to adjudicate any cause of

---

[13]    If the exercise of personal jurisdiction is authorized by the forum's long-arm statute and comports with due process, the Court must determine whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case. *Chloé*, 616 F.3d at 164 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). At this final step, the defendant bears the burden of establishing that personal jurisdiction would be unreasonable by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

action against the defendant, regardless of where it arose.  *Id.*[14]  Specific jurisdiction "is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.*

### A.  Personal Jurisdiction Over Defendant Harrison Global

Specific personal jurisdiction is claim specific.  Thus, each claim must be separately analyzed to ascertain whether Plaintiff has established personal jurisdiction as to that claim. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary" who, *inter alia*, "transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted).  Section 302(a)(1) is a "single-act statute," which means that "one purposeful transaction in New York is sufficient to trigger Section 302(a)(1) as long as there is a 'substantial relationship between the transaction and the claim asserted.'"  *RV Skincare Brands LLC v. Digby Invs. Ltd.*, 394 F. Supp. 3d 376, 381 (S.D.N.Y. 2019) (quoting *Chloé*, 616 F.3d at 170).

Section 302(a)(2) provides for jurisdiction over a non-domiciliary who "commits a tortious act within the state."  N.Y. C.P.L.R. § 302(a)(2).  Although generally the "defendant's

---

[14]     Plaintiff does not argue that the Court can exercise general jurisdiction over Defendants.  *See* Pl. Mem., Dkt. 114, at 31–32.  As the Court held previously, *see* Opinion and Order, Dkt. 55 ("Opinion"), at 6–7, 13 n.1, subjecting Harrison Global — a corporation organized under the laws of and headquartered in Massachusetts, 56.1 St. ¶ 6 — to general jurisdiction in New York would not comport with due process, as Plaintiff has failed to offer any facts tending to show the Company's contacts with New York "are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home'" in New York.  *Gucci Am., Inc. v. Li*, 768 F.3d 122, 135 (2d Cir. 2013) (quoting *Daimler*, 571 U.S. at 139).  Pitel is domiciled in Pennsylvania, 56.1 St. ¶¶ 12–13, and thus cannot be subject to general jurisdiction in New York.  *See Daimler*, 571 U.S. at 137.

[tortious] act or omission must have occurred within New York," the statute extends "to out-of-state individuals who did not themselves commit a tort in New York, but who can be deemed responsible for such a tort based upon theories of agency or conspiracy." *Paige v. Digital Bus. Networks All., Inc.*, No. 24-CV-3169 (KMK), 2025 WL 753952, at \*9 (S.D.N.Y. Mar. 10, 2025) (citations and internal quotation marks omitted).

Under Section 302(a)(3), a court may exercise jurisdiction over a defendant that commits a tortious act outside of New York causing injury within the state, so long as the defendant (i) regularly engages in business in New York or "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). Courts apply a situs-of-injury test to "locate the original event which caused the injury," *Paige*, 2025 WL 753952, at \*9 (citation and internal quotation marks omitted), but "[t]he injured party's residence or domicile in New York 'is not a sufficient predicate for jurisdiction under [Section] 302(a)(3),'" *id.* (quoting *IBE Trade Corp. v. Dubinsky*, No. 21-CV-1879, 2022 WL 1487214, at \*2 (2d Cir. May 11, 2022) (unpublished)).[15]

### 1. The Court Lacks Personal Jurisdiction Over Harrison Global with Respect to Plaintiff's Sex-Discrimination Claim

Harrison Global does not dispute that it engages in extensive business in New York that satisfies the "transacting business" prong of New York's long-arm statute, C.P.L.R. § 302(a)(1); it argues, however, that Plaintiff's claim does not arise out of those transactions. Def. Mem., Dkt. 93, at 10–13.

---

[15]    The Amended Complaint alleges facts generally supporting the invocation of all provisions of New York's long-arm statute. *See* Am. Compl., Dkt. 29, ¶¶ 12–18. Plaintiff appears to maintain her position that the Court has personal jurisdiction based on all provisions of Section 302(a) other than C.P.L.R. § 302(a)(4). *See* Pl. Mem. at 31–32.

At the motion to dismiss stage, the Court found that it had personal jurisdiction over Plaintiff's sex-discrimination claim based on the allegations in the Amended Complaint. *See* Opinion at 8–10. In reaching that conclusion, the Court relied principally on precedent holding that discrimination claims "arise from" an out-of-state defendant's business in New York when the defendant knowingly "supervise[s] or communicate[s] with an employee working remotely from New York," and the defendant's communications to the employee "allegedly constitute[] acts of discrimination." *Kumar v. Opera Sols. OPCO, LLC*, No. 20-CV-6824 (GHW), 2021 WL 4442832, at *8 (S.D.N.Y. Sept. 28, 2021) (collecting cases); *see also Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 358–59 (S.D.N.Y. 2007) (finding Section 302(a)(1) satisfied where the plaintiff worked from home in New York City and assignments given to the plaintiff that allegedly gave rise to disparate treatment were communicated by the defendants to the plaintiff via telephone, email, and fax).

With regard to Section 302(a)(1), Plaintiff has failed to substantiate her allegations that Defendants knew she worked remotely from New York.[16] Defendants have proffered a wide range of evidence, including onboarding documentation, background search results, annual tax forms, and email communications contemporaneous with Plaintiff being hired, tending to show that, as far as the Company was aware, Plaintiff worked remotely from Florida, Georgia, and New Jersey while in their employ. 56.1 St. ¶ 30; Mongiori Decl. ¶¶ 4–12 and Exs. A, B, D, E, and F thereto. Defendants have also submitted sworn declarations from Pitel, Mongiori, and

---

[16] Because of the divergent standards that apply at the motion to dismiss and summary judgment stages, the Court's prior decision at the motion to dismiss stage that Plaintiff had adequately alleged personal jurisdiction does not preclude reconsideration of this issue at the summary judgment stage. *See Alfandary v. Nikko Asset Mgmt. Co.*, No. 17-CV-5137 (LAP), 2022 U.S. Dist. LEXIS 58890, at *5 (S.D.N.Y. Mar. 30, 2022) ("[B]ecause of the divergent standard of review applicable to motions to dismiss and motions for summary judgment, the law of the case doctrine is inapposite to the Court's analysis of whether, after the close of discovery, genuine issues of fact have been raised which survive summary judgment.").

Lofgren averring that they understood Plaintiff to reside in Florida and Georgia.  56.1 St. ¶ 31; Pitel Decl. ¶ 11; Mongiori Decl. ¶ 4; Lofgren Decl. ¶ 34.  Plaintiff's countervailing "evidence" — her unsubstantiated averments that: while she was being recruited, Solombrino knew of and valued her long-time residence in New York; she told Pitel around the time she was hired that she had an apartment in New York; and a New York driver's license was included in her onboarding paperwork — all suggest only that Defendants may have known that she resided in New York prior to being hired by the Company.  *See* 56.1 St. ¶¶ 27–30, 35–36, 120, 128; Pl. Decl. ¶¶ 14–15, 19, 29; Mongiori Decl., Exs. A and B; Goldberg Decl., Ex. 12.  That "evidence," viewed in the light most favorable to Plaintiff, does not contradict Defendants' evidence that they were unaware that Plaintiff resided or worked in New York at the time of the alleged discrimination.[17]  The Court, therefore, finds no genuine dispute that Defendants were unaware that Plaintiff worked remotely from New York during her tenure at the Company.

Having failed to adduce facts showing Defendants knew Plaintiff worked remotely from New York, the support for her proposition that her claims arise from Defendants' New York contacts is exceedingly thin.  Personal jurisdiction over claims of discrimination can be extended to a non-domiciliary employer if the employer knows, or takes steps to facilitate, the employee working remotely in the jurisdiction.  *See Kumar*, 2021 WL 4442832, at *8 (collecting cases where employers hired plaintiffs knowing they would work remotely); *Int'l Healthcare Exch.*, 470 F. Supp. 2d at 359 (finding personal jurisdiction where "the alleged misconduct comprised transactions that were purposefully directed toward New York"); *DeMaria v. Nutritional Beverages, LLC*, No. 23-CV-7314 (DLI)(JRC), 2024 WL 4145743, at *7 (E.D.N.Y. Sept. 11, 2024) ("[C]ourts have found that personal jurisdiction extends to nondomiciliary employers that

---

[17]    Plaintiff admitted in her deposition that she did not state her location when participating in calls from New York.  56.1 St. ¶ 36; Pl. Tr. 149:19–21, 150:15–151:19.

knowingly and purposefully create an ongoing relationship with an employee working remotely in New York."). Without evidence that Defendants knew Plaintiff worked remotely from New York, premising personal jurisdiction solely on the basis of her work location would be akin to extending personal jurisdiction to a non-domiciliary that makes telephone calls or sends communications into New York. Those contacts are clearly, however, an insufficient basis on which to exercise jurisdiction under Section 302(a)(1). *JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844 (CS), 2019 WL 2578306, at *8 (S.D.N.Y. June 24, 2019), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571 (2d Cir. 2020) (collecting cases).

Turning to the remainder of the record, the only allegation pertaining to Plaintiff's sex-discrimination claim that could conceivably arise from Defendants' New York contacts is the comment Pitel allegedly made regarding models working for Victoria's Secret. That comment was allegedly made in connection with the Company's provision of transportation services to models working at a fashion show in New York, *see* 56.1 St. ¶¶ 152–55; that suffices to show an "articulable nexus" to Defendants' transaction of business in the state, *Melling v. Hamilton Point Invs., LLC*, No. 1:18-CV-3514 (ARR) (SMG), 2019 U.S. Dist. LEXIS 7890, at *8 (E.D.N.Y. Jan. 16, 2019) ("[T]here need only be a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." (citations and internal quotation marks omitted)).

Standing alone, however, that remark was not "extraordinarily severe" or even directed at Plaintiff such that it can carry her hostile work environment claim. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see also Adams v. Equinox Holdings, Inc.*, 662 F. Supp. 3d 444, 460–61

(S.D.N.Y. 2023), *aff'd,* No. 23-608, 2024 WL 1787108 (2d Cir. Apr. 25, 2024) (two stray comments directed at plaintiff insufficient to support hostile work environment claim).[18]

The other provisions of Section 302(a) do not provide a basis for the Court to exercise personal jurisdiction.  Because Pitel was located outside of New York when he engaged in the conduct at issue, Section 302(a)(2) does not apply.  *See Paige,* 2025 WL 753952, at *9.  With respect to Section 302(a)(3), because the record reflects that Defendants were not aware of Plaintiff's New York's domicile, Pitel could not have reasonably expected his actions to have an effect in the state; domicile of the plaintiff alone is not a sufficient predicate to exercise jurisdiction.  *Id.*

### 2. The Court Lacks Personal Jurisdiction Over Harrison Global with Respect to Plaintiff's Age-Discrimination Claims

The Court lacks specific jurisdiction over Harrison Global with respect to Plaintiff's age-discrimination claims because Plaintiff has not supported her assertion that AmexGBT is based in New York with admissible evidence.  *See Nora Beverages, Inc.*, 269 F.3d at 123.  Defendants assert that AmexGBT is headquartered in the United Kingdom, the company did not maintain any physical locations in New York, and Bawar, Plaintiff's chief point of contact at AmexGBT, used a non-New York phone number.  56.1 St. ¶¶ 127, 213–16.  Defendants further deny that there were meetings in New York regarding reassignment of the account.  56.1 St. ¶¶ 216, 218. Plaintiff's averments that such a meeting took place are based on statements Bawar allegedly made to her repeating statements Pitel allegedly made to Bawar.  Those statements are inadmissible hearsay because they are introduced for their truth.  *See Sec. & Exch. Comm'n v. Gallison*, 588 F. Supp. 3d 509, 514 n.1 (S.D.N.Y. 2022).

---

[18]    The Court expresses no view on whether the remark, coupled with other remarks properly presented before a court that can exercise personal jurisdiction over Defendants, could support a hostile work environment claim.

Plaintiff's assertion that AmexGBT is based in New York is vague and unsupported by any facts in the record. Because Plaintiff has failed to present admissible evidence of any nexus between her age-discrimination claims and the Company's New York contacts, the Court lacks personal jurisdiction over those claims. *See Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (requiring the nonmoving party, after the moving party meets its burden, to show more than "metaphysical doubt as to the material facts," relying on more than "conclusory allegations or unsubstantiated speculation" (citation omitted)).

### 3. The Court Lacks Personal Jurisdiction Over Harrison Global with Respect to Plaintiff's Retaliation Claims

Personal jurisdiction over Plaintiff's retaliation claim can only be appropriate if the Defendants could have reasonably expected the termination of her employment would cause Plaintiff injury while she resided in New York. C.P.L.R. § 302(a)(3). As the Court concluded above, Plaintiff has submitted no admissible evidence that would prove Defendants were aware that Plaintiff worked remotely from New York; in the absence of such evidence, there is no basis on which to conclude that Defendants could have reasonably expected her termination to have an effect in the state. *See Paige*, 2025 WL 753952, at *9

### B. The Court Lacks Personal Jurisdiction Over the Sex-Discrimination Claims Against Defendant Pitel

For the same reasons that the Court found it lacks personal jurisdiction over Plaintiff's sex-discrimination claims against Harrison Global, it also lacks specific jurisdiction over such claims against Pitel. Plaintiff's claims against the Company are largely premised on Pitel's conduct. As discussed above, however, Plaintiff has presented no evidence to create a triable question of fact concerning whether Pitel knew that Plaintiff worked remotely from New York. The only allegation that could arguably arise from Pitel's contacts with New York pertains to the

comment he made about the Company providing transportation services for models in New York; that allegation is insufficient by itself to support Plaintiff's sex-discrimination claim. *See* Section I.A.1, *supra*.

## II.    Transfer to a Venue That Could Exercise Personal Jurisdiction

Because a dismissal for lack of jurisdiction does not address the merits of Plaintiff's claims, the proper course would be to deny Defendants' motion for summary judgment without prejudice and dismiss this lawsuit without prejudice. *Seaweed, Inc. v. DMA Prod. & Design & Mktg. LLC.*, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002) (citing *Baker v. Carr,* 369 U.S. 186, 199–200 (1962)). Section 1631 of Title 28, U.S.C., however, also empowers the Court *sua sponte* to transfer this action to a venue that could exercise personal jurisdiction over Defendants if doing so would be "in the interest of justice." *Moscato v. MDM Grp., Inc.*, No. 05 CIV. 10313 (KMW), 2008 WL 2971674, at *5 (S.D.N.Y. July 31, 2008) (quoting 28 U.S.C. § 1631). Deciding whether to transfer an action rather than dismiss it requires the Court to "carefully weigh the equities." *Id.* (quoting *Paul v. INS,* 348 F.3d 43, 47 (2d Cir. 2003)).

The parties' summary judgment briefing does not address the possibility of transfer. Certain facts have not been presented to the Court, such as which courts could exercise personal jurisdiction in light of the several jurisdictions from which Company employees worked remotely, and whether, in the event Plaintiff's action is dismissed, the statute of limitations would bar her from filing these claims elsewhere. Weighing the equities is, therefore, challenging. Given the lengthy history of this lawsuit and the parties' apparent agreement that Harrison Global is domiciled in Massachusetts, the Court is inclined to transfer this action to the District of Massachusetts.

## CONCLUSION

For the reasons discussed above, the Court lacks personal jurisdiction over this action. The parties are directed to meet and confer in a good-faith attempt to resolve whether this action should be transferred, and, if so, to which District Court. By **Thursday, July 17, 2025**, the parties must show cause why this case should not be transferred to the United States District Court for the District of Massachusetts. The parties' submission should consist of a joint letter, not to exceed **1,200 words**. If the parties reach an agreement, the letter must indicate to which district the Court should transfer the case. If the parties cannot agree, the letter must indicate the parties' positions on whether transfer is appropriate and, if so, to what jurisdictions.

**SO ORDERED.**

Date:  **June 25, 2025**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**